FILED

1  STRANGE & CARPENTER
2  Brian R. Strange (Cal. Bar. No. 103252)
   LACounsel@earthlink.net
3  12100 Wilshire Boulevard, Suite 1900
   Los Angeles, CA 90025
4  Telephone: (310) 207-5055
   Facsimile: (310) 826-3210
5
6  LAW OFFICE OF JOSEPH MALLEY
   Joseph H. Malley (*pro hac vice* pending)
7  malleylaw@gmail.com
   1045 North Zang Blvd
8  Dallas, TX 75208
9  Telephone: (214) 943-6100

10 Attorneys for Plaintiffs

2011 DEC -8  PM 3: 50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

11        IN THE UNITED STATES DISTRICT COURT

12     FOR THE CENTRAL DISTRICT OF CALIFORNIA

13        SOUTHERN DIVISION—SANTA ANA

14

| | |
|---|---|
| 15  LISA CLARK, FELIPE GARCIA and | CASE No.  **SACV11-01899 AG (JPRx)** |
| 16  ROBERT SPRADLEY; individuals, on | |
| 17  behalf of themselves and others similarly | DEMAND FOR JURY TRIAL |
|     situated, | |
| 18           Plaintiffs, | **CLASS ACTION COMPLAINT** |
| 19  | **FOR VIOLATIONS OF:** |
| 20  v. | |
| 21  CARRIER IQ, INC., a Delaware | 1. ELECTRONIC |
|     Corporation; SAMSUNG |    COMMUNICATIONS |
| 22  ELECTRONICS AMERICA, INC., and |    PRIVACY ACT, 18 U.S.C. |
|     SAMSUNG |    §2510; |
| 23  TELECOMMUNICATIONS | 2. STORED COMMUNICATIONS |
| 24  AMERICA, LLC |    ACT, 18 U.S.C. §2701; |
| 25  | 3. CONSUMER LEGAL |
|     |    REMEDIES ACT, ("CLRA") |
| 26           Defendant. |    CALIFORNIA CIVIL CODE § |
|     |    1750; |
| 27  | 4. UNFAIR COMPETITION LAW, |
| 28  |    CALIFORNIA BUSINESS AND |

PROFESSIONS CODE §17200;
5. CALIFORNIA'S COMPUTER CRIME LAW, PENAL CODE §502;
6. CALIFORNIA INVASION OF PRIVACY ACT, PENAL CODE §630;
7. SONG-BEVERLY WARRANTY ACT, CALIFORNIA CIVIL CODE § 1792
8. TEXAS DECEPTIVE TRADE PRACTICES ACT, TEXAS BUSINESS AND COMMERCE CODE § 17.41
9. BREACH OF EXPRESS WARRANTY
10. BREACH OF IMPLIED WARRANTY
11. NEGLIGENCE
12. TRESPASS TO PERSONAL PROPERTY/ CHATTELS
13. CONVERSION
14. UNJUST ENRICHMENT

1.　Plaintiffs Lisa Clark, Felipe Garcia and Robert Spradley (collectively, "Plaintiffs"), by and through their attorneys Strange & Carpenter, and Law Office of Joseph H. Malley, P.C., brings this action on behalf of themselves and all others similarly situated, against Carrier IQ, Inc. ("Carrier IQ"), Samsung Electronics America, Inc. and Samsung Telecommunications America, CLL (collectively with Samsung Electronics America, Inc., "Samsung") (collectively with Carrier IQ, "Defendants"). Plaintiffs' allegations as to themselves and their own actions, as set forth herein, are based upon their information and belief and personal knowledge. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) as set forth below.

## I.   NATURE OF THE ACTION

2.     Plaintiffs brings this consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) on behalf of themselves and a proposed class of similarly situated consumers ("Class Members") who purchased a Samsung mobile device on which Carrier IQ's software, "IQ Agent," was installed, without notice or consent of Plaintiffs. This IQ Agent software was designed by Carrier IQ and customized by Samsung in order to log and collect confidential, unencrypted user data including but not limited to (1) the contents of incoming text messages; (2) the URLs of websites visited by the user; and (3) the user's GPS coordinates; among other private and personally-identifying data. IQ Agent records this confidential data on a user's mobile device in an unencrypted format so that *any* device software or applications with log file permission can access and review it. Carrier IQ and Samsung also have access to this confidential data and can transmit the data from a user's mobile device to remote servers at any time via hidden "text requests" sent to a user's mobile device by Carrier IQ, Samsung or other authorized third parties. IQ Agent logs the hidden text requests and the confidential data silently so that a user has no idea that data is being collected and transmitted. IQ Agent is preinstalled on Samsung's mobile devices so that data logging begins the moment a user purchases and turns on the device, without notice to or consent from the user. Because the software is preinstalled by Samsung and runs as part of the device operating system, data is automatically collected and can be transmitted via wireless internet or other means, even if the device user has no carrier contract and the mobile device is not connected to a mobile network. Finally, IQ Agent runs continuously and depletes resources on the mobile device without notice to or authorization of the user, even when the mobile device is not being used. The resources depleted by IQ Agent without notice or authorization include (1) battery power; (2) device memory; (3) CPU; (4) bandwidth; and (5)

1    text messages. A user cannot stop the IQ Agent software from running under any

2    circumstances, and a user is unable to remove IQ Agent from the device without

3    voiding the manufacturer's warranty.

4        3.    Because of Defendants' actions, Plaintiffs and Class Members are

5    victims of unfair, deceptive, and unlawful business practices; wherein their

6    privacy, financial interests, and security rights, were violated by Carrier IQ and

7    Samsung. Plaintiffs and Class Members were financially harmed by the

8    Defendants when they purchased the Samsung mobile devices with IQ Agent,

9    and Plaintiffs would not have purchased those devices if they had known that

10   Defendants' software could access, collect, transmit, analyze, store, and provide

11   their confidential unencrypted data to *any* device software or applications with

12   log file permission without Plaintiffs' knowledge of permission. Plaintiffs and

13   Class Members were also harmed by Samsung and Carrier IQ's unauthorized use

14   of their mobile device battery power, device memory, CPU, bandwidth and text

15   messages.

16       4.    Samsung manufactured and sold to Plaintiffs and Class Members

17   without notice, a defective product that included IQ Agent, specially customized

18   by Samsung for use on its mobile device. Samsung acted individually, and in

19   concert with, Carrier IQ to gain unauthorized access to, log, collect, and transmit

20   Plaintiffs' and Class Members' confidential, unencrypted data and to provide

21   third-party access to this data. IQ Agent is a native Samsung application that was

22   installed on Samsung mobile devices with the knowledge of Samsung.

23       5.    Carrier IQ acted independently, and in concert with Samsung,

24   knowingly authorizing, directing, ratifying, acquiescing in, or participating in the

25   conduct alleged herein.

26       6.    Carrier IQ individually, and in concert with Samsung has been

27   systematically engaged in and facilitated a covert operation of logging and

28   tracking Plaintiffs' and Class Members' confidential, unencrypted user data and

utilizing Plaintiffs' and Class Members' mobile device resources, violating one or more of the following:

      (a)   ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. §2510;

      (b)   STORED COMMUNICATIONS ACT, 18 U.S.C. §2701;

      (c)   CONSUMER LEGAL REMEDIES ACT, ("CLRA") CALIFORNIA CIVIL CODE § 1750;

      (d)   UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200;

      (e)   CALIFORNIA'S COMPUTER CRIME LAW, PENAL CODE §502;

      (f)   CALIFORNIA INVASION OF PRIVACY ACT, PENAL CODE §630;

      (g)   SONG-BEVERLY WARRANTY ACT, CALIFORNIA CIVIL CODE § 1792

      (h)   TEXAS DECEPTIVE TRADE PRACTICES ACT, TEXAS BUSINESS AND COMMERCE CODE § 17.41

      (i)   BREACH OF EXPRESS WARRANTY

      (j)   BREACH OF IMPLIED WARRANTY

      (k)   NEGLIGENCE

      (l)   TRESPASS TO PERSONAL PROPERTY/ CHATTELS

      (m)   CONVERSION

      (n)   UNJUST ENRICHMENT

## II.   JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds

1    $5,000,000 and minimal diversity exists.

2        8.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c)

3    against Defendants. Although Carrier IQ purports to exist as a separate and

4    independent entity, facts show that it has an incestuous business relationship with

5    associated entities. Its operations, management and infrastructure are in fact

6    closely linked with the company Core Mobility, Inc. ("Core Mobility") and its

7    Orange County-based parent company, Smith Micro Software, Inc. ("Smith

8    Micro"). Carrier IQ and Core Mobility are both founded by the same parties,

9    arise from patents by the same inventor, and share offices next door in Mountain

10   View,    California.    An    IP    address    linked    to    the    hostname

11   "collector.argus.coremobility.com"    actually    goes    to    the    hostname

12   "collector.argus.carrieriq.com." In other words, data one expects to be going to

13   Carrier IQ could be transmitted to Core Mobility. Additionally Core Mobility

14   owns what is believed to be a majority of shares in Carrier IQ. For all intents and

15   purposes, Core Mobility and Carrier IQ are assimilated.

16       9.    Core Mobility is a wholly-owned subsidiary of Smith Micro, a

17   software company based in Aliso Viejo, California. According to Smith Micro's

18   2009 10K, Smith Micro acquired Core Mobility in its entirety and "assimilate[d]

19   the operations, products and personnel of [Core Mobility] and train[ed],

20   retrain[ed] and motivate[d] key personnel from the acquired business."

21       10.    Core Mobility's telephone service identifies the company as "Smith

22   Micro Software" and Core Mobility executive employees at the Smith Mirco

23   office and have Smith Micro titles. It appears that Core Mobility does not have its

24   own office or personnel apart from Smith Micro, and its operations have been

25   completely assimilated into Smith Micro. It also appears that Core Mobility and

26   Carrier IQ are separate entities in name only so that Carrier IQ is also managed

27   by Smith Micro in this District.

28       11.    This Court has personal jurisdiction over the Defendants because

1    Carrier IQ maintains its corporate headquarters in, and the events, conduct and
2    omissions giving rise to the violations of law complained herein occurred in
3    California. Samsung conducts business in California and engaged in the acts
4    alleged herein in California.

5         12.    This Court also has subject matter jurisdiction over all causes of
6    action and the Defendants implicated therein pursuant to 28 U.S.C. §1332(d), and
7    because this action arises in part under a federal statute and this Court has
8    jurisdiction pursuant to 18 U.S.C. §2710(c) which confers jurisdiction in the
9    United States District Court for actions related to the Electronic Communications
10   Privacy Act 18 U.S.C. §2510 and the Stored Communications Act, 18 U.S.C.
11   §2701.

12   **III.   PARTIES**

13        13.    Plaintiff Lisa Clark ("Clark") is a citizen and resident of Ardmore,
14   Oklahoma, (Carter County). On information and belief, Clark incorporates all
15   allegations within this complaint. Clark is a representative of the class ("Class"),
16   as defined within the Class Allegations. In or around 2011, Clark purchased a
17   Samsung Galaxy that was preinstalled or updated with IQ Agent, and used such
18   mobile device on one or more occasions during the class period in Oklahoma.

19        14.    Clark was not aware that IQ Agent was installed on her Samsung
20   device, and was not aware that every time she used his Samsung device, IQ
21   Agent was logging and collecting her confidential incoming text messages; the
22   URLs of websites she visited; and her actual GPS coordinates; among other
23   private and personally-identifying data. She also was not aware that IQ Agent
24   made this confidential, unencrypted data available on Clark's mobile device log
25   so that *any* device software or applications with log file permission could access
26   it. Finally, Clark was not aware that IQ Agent depleted her mobile device battery
27   power, device memory, CPU, bandwidth and text messages, even while she was
28   not using her device. The IQ Agent software does not show up under the

1   application launch list on Clark's device.

2       15.    Plaintiff Felipe Garcia ("Garcia") is a citizen and resident of Dallas,
3 Texas (Dallas County). On information and belief, Garcia incorporates all
4 allegations within this complaint. Garcia is a representative of the Class, as
5 defined within the Class Allegations. In or around November 2011, Garcia
6 purchased a Samsung Galaxy S II Epic Touch mobile device that was preinstalled
7 with IQ Agent, and used such mobile device on one or more occasions during the
8 class period in Texas.

9       16.    Garcia was not aware that IQ Agent was installed on his Samsung
10 device, and was not aware that every time he used his Samsung device, IQ Agent
11 was logging and collecting his confidential incoming text messages; the URLs of
12 websites he visited; and his actual GPS coordinates; among other private and
13 personally-identifying data. He also was not aware that IQ Agent made this
14 confidential, unencrypted data available on Garcia's mobile device log so that
15 *any* device software or applications with log file permission could access it.
16 Finally, Garcia was not aware that IQ Agent depleted his mobile device battery
17 power, device memory, CPU, bandwidth and text messages, even while he was
18 not using his device. The IQ Agent software does not show up under the
19 application launch list on Garcia's device.

20       17.    Plaintiff Robert Spradley ("Spradley") is a citizen and resident of
21 Amarillo, Texas (Potter County). On information and belief, Spradley
22 incorporates all allegations within this complaint. Spradley is a representative of
23 the Class, as defined within the Class Allegations. In or around December 2010,
24 Spradley purchased a Samsung Galaxy Epic 4G mobile device that was
25 preinstalled or updated with IQ Agent, and used such mobile device on one or
26 more occasions during the class period in Texas.

27       18.    Spradley was not aware that IQ Agent was installed on his Samsung
28 device, and was not aware that every time he used his Samsung device, IQ Agent

1  was logging and collecting his confidential incoming text messages; the URLs of

2  websites he visited; and his actual GPS coordinates; among other private and

3  personally-identifying data. He also was not aware that IQ Agent made this

4  confidential, unencrypted data available on Spradley's mobile device log so that

5  *any* device software or applications with log file permission could access it.

6  Finally, Spradley was not aware that IQ Agent depleted his mobile device battery

7  power, device memory, CPU, bandwidth and text messages, even while he was

8  not using his device. The IQ Agent software does not show up under the

9  application launch list on Spradley's device.

10      19.    Carrier IQ is a Delaware corporation that maintains and has

11  maintained at all relevant times its headquarters at 1200 Villa Street, Suite 200,

12  Mountain View, CA, 94041 (Santa Clara County, California). Carrier IQ does

13  business throughout the United States, and in particular, does business in the

14  State of California and in this County.

15      20.    Samsung Electronics America, Inc. is a New York corporation with

16  its principal place of business located at 105 Challenger Road, Ridgefield Park,

17  New Jersey 07660. Samsung Electronics America, Inc. does business throughout

18  the United States, and in particular, does business in the State of California and in

19  this County.

20      21.    Samsung Telecommunications America, Inc. is a Delaware

21  corporation with its principal place of business located at 1301 East Lookout

22  Drive, Richardson, Texas 75081. Samsung Telecommunications America, Inc.

23  does business throughout the United States, and in particular, does business in the

24  State of California and in this County.

25  **IV.  PLAINTIFFS' EXPERIENCE**

26      22.    At all relevant times herein, Plaintiffs were and are residents of

27  Oklahoma and Texas. During the class period, Plaintiffs owned and operated one

28  or more Samsung mobile devices installed with IQ Agent without Plaintiffs'

1  knowledge.

2  23.  On one or more occasions during the class period, Plaintiffs

3  accessed and used their Samsung mobile devices to receive text messages and

4  visit websites in their cities of residence and elsewhere.

5  24.  During the relevant class period, the IQ Agent software was

6  "hidden" and did not appear on application launch menu on Plaintiffs' Samsung

7  mobile devices. During the relevant class period, Plaintiffs were unaware that IQ

8  Agent populated and logged incoming text messages, visited URLs and GPS

9  location data on their device log files. Plaintiffs were also unaware that this

10  confidential data was available, unencrypted, to all software and programs with

11  log file permission running on their devices. Additionally, they were unaware

12  that IQ Agent had the mechanisms to, and did, transmit user data from Plaintiffs'

13  devices to remote servers via periodic scheduling, WAP push requests, and text

14  requests.

15  25.  During the relevant class period, IQ Agent, customized in part by

16  Samsung, was "hidden" and did not appear on the launch list of applications and

17  software installed on Plaintiffs' Samsung mobile devices.

18  26.  In or around November 2011, Plaintiffs became aware of

19  information related to the tracking activities of Carrier IQ and Samsung.

20  27.  Plaintiffs' mobile devices revealed that the IQ Agent software

21  resided on their device without notice to Plaintiffs or authorization from

22  Plaintiffs.

23  28.  Plaintiffs consider information about their received text messages,

24  visited websites and GPS location to be in the nature of confidential and personal

25  information that they protect from disclosure, including by controlling their

26  mobile device's privacy settings for acceptance or rejection. Plaintiffs were not

27  made aware by Defendants of the existence of IQ Agent on their mobile devices

28  or the logging, collection and transmission of their mobile device data.

29.    Plaintiffs also consider their device battery power, device memory, CPU, bandwidth and text messages to be valuable personal property that they protect from unauthorized use by third parties, including by controlling what software and applications have access to those resources. Plaintiffs were not made aware by Defendants of the existence of IQ Agent on their mobile devices or the depletion of their device battery power, device memory, CPU, bandwidth and text messages by that software.

30.    It is Plaintiffs' belief that The Carrier IQ software, customized in part by Samsung, was logging, collection and transmission of confidential user data on their mobile devices permitted one or more objects within their mobile devices to be used for tracking and analysis by Defendants and/or third parties, thus their mobile device data was obtained in an effort to monitor and profile their mobile device activities. Plaintiffs did not receive notice of the installation of a tracking identifier, did not consent to its installation, and did not want a tracking identifier to be installed on their mobile device. Moreover, Plaintiffs did not authorize Defendants to log, collect, transmit, or store their confidential mobile device data without notice or express consent. Such software was running on Plaintiffs mobile device and collecting and transmitting Plaintiffs data without notice or authorization, utilizing Plaintiffs battery power, device memory, CPU, bandwidth and limited text messages without notice or authorization, even when Plaintiffs stopped actively using the device.

31.    In selecting the Samsung mobile device over the service and goods of other competing mobile device manufacturers, Plaintiffs reasonably expected that their confidential user data would not be accessed, logged and transmitted to third parties without their knowledge and consent. They also reasonably expected that their mobile device resources would not be depleted without their knowledge or control.

32.    Had Plaintiffs known that the Samsung devices they purchased

would include software that provided third party access to their confidential user data and their mobile device resources without notice to or authorization by Plaintiffs, Plaintiffs would have not purchased those devices.

33.    Plaintiffs were harmed by Defendants' practices, including but not limited to the following:

(a)    Costs to purchase the defective Samsung mobile device;

(b)    Violations of Plaintiffs' legally protected federal, state and common law rights of privacy, especially related to unencrypted logging, storage and transmission of Plaintiffs' confidential user data;

(c)    Time and expense to remedy the effects of Defendants' actions;

(d)    Time and expense to repair Plaintiffs' mobile devices and remedy the impaired operability caused by the Defendants;

(e)    Loss of property due to the inability to re-sell Plaintiffs' and Class Members' mobile devices due to the Carrier IQ application; and

(f)    Financial harm by the Defendants' unauthorized use of Plaintiffs' and mobile device resources during the unauthorized process of logging and transmitting user data.

34.    It is Plaintiffs' belief that IQ Agent's logging, collection and transmission of confidential user data on their mobile devices permitted one or more objects within their mobile devices to be used for tracking and analysis by Defendants and/or third parties, thus their mobile device data was obtained in an effort to monitor and profile their mobile device activities. Plaintiffs did not receive notice of the installation of a tracking identifier, did not consent to its installation, and did not want a tracking identifier to be installed on their mobile device. Moreover, Plaintiffs did not authorize Defendants to log, collect, transmit, or store their confidential mobile device data without notice or express consent.

35.     Defendants' business practices unfairly wrested from Plaintiffs control over their user data privacy and control over their device resources. Defendants' logging, collection, and unencrypted disclosure of Plaintiffs' confidential user data violates user expectations, diminishes user privacy, and contradicts the Manufacturer's Warranty. Defendants caused harm and damages to Plaintiffs' finite device resources, thus preventing Plaintiffs to use the devices for their intended purposes and resulting in instability issues.

## V.    COMMON EXPERIENCES BETWEEN PLAINTIFFS AND CLASS MEMBERS

36.     At all relevant times herein, the sequence of events, and consequences common to Plaintiffs and Class Members, made the basis of this action, include, but are not limited to the following:

(a)     Plaintiffs and Class Members are individuals in the United States who purchased and used a Samsung mobile device that had IQ Agent software installed and customized by Samsung, without notice or consent;

(b)     Samsung a mobile device manufacturer had entered into a legally binding contract with Carrier IQ to host the IQ Agent software on its mobile device.

(c)     Carrier IQ was aware that Samsung had preinstalled IQ Agent on Plaintiffs' and Class Members' mobile devices, aware. That Samsung had customized y IQ Agent, aware that IQ Agent was "hidden" and did not appear in the launch list of applications installed on Plaintiffs' and Class Members' mobile devices;

(d)     Plaintiffs and Class Members accessed and used their Samsung mobile devices that had the preinstalled or uploaded IQ Agent software application;

(e)     Carrier IQ collected confidential user data from Plaintiffs' and Class Members' mobile devices without the consent of, or notice to,

Plaintiffs and Class Members;

(f)     Carrier IQ sent Plaintiffs' and Class Members' unencrypted confidential mobile device data to its servers located in California without notice to or authorization from Plaintiffs and Class Members;

(g)     Samsung transmitted, and/or allowed access to Plaintiffs' and Class Members' confidential mobile device data, without notice or authorization, to Samsung and *any* software with log file access on Plaintiffs' and Class Members' devices. Upon information and belief, this confidential data was unencrypted when stored in the log file and during at least some part of its transmission;

(h)     Carrier IQ created a database related to Plaintiffs' and Class Members' mobile device data and activities, to assist the Defendant's tracking scheme. Such tracking could not be detected, managed or deleted, and provided, in whole or part, the collective mechanism to track Plaintiffs and Class Members, without notice or consent;

(i)     Carrier IQ conducted systematic and continuous surveillance of the Plaintiffs' and Class Members' mobile device activity from its headquarters in California which continues to date;

(j)     Carrier IQ copied, used, and stored Plaintiffs' and Class Members' mobile device data in California after it knowingly accessed, without authorization, Plaintiffs' and Class Members' mobile devices;

(k)     Carrier IQ obtained and retained the data in California for a period that far exceeded the purpose claimed by Carrier IQ for obtaining the data;

(l)     Carrier IQ obtained individually, and in concert with Samsung, Plaintiffs' and Class Members' confidential user data, derived, in whole or part, from its monitoring the mobile device activities of Plaintiffs and Class Members. This sensitive information includes but is not limited to

incoming text messages, visited URLs and GPS coordinates;

(m)    Samsung and Carrier IQ failed to notify and warn Plaintiffs and Class Members of Carrier IQ's logging and tracking activities involving their mobile devices before, during, or after the unauthorized practices so that Plaintiffs and Class Members were unable to take appropriate actions to opt-out of the unauthorized surveillance by Defendants and other third parties;

(n)    Samsung failed to block access to, and void the licensing agreements of Carrier IQ after it received notice of Carrier IQ's tracking actions made the basis of this action;

(o)    Carrier IQ and Samsung failed to provide any terms of service or privacy policy related to the use of IQ Agent for tracking Plaintiffs' and Class Members' mobile activities, or provide an updated privacy policy or any notice alerting users of its activity, made the basis of this action so that Plaintiffs and Class Members had no notice of such activities, nor the ability to mitigate their harm and damage after the fact;

(p)    Defendants converted Plaintiffs' and Class Members' mobile device data, including but not limited to their incoming text messages, visited URLs and GPS coordinates;

(q)    Defendants depleted Plaintiffs' and Class Members' mobile device resources while running the IQ Agent software, including the device battery power, device memory, CPU, bandwidth and text messages.

37.    Plaintiffs and Class Members involved with the Defendants were harmed by Defendants' practices, including but not limited to the following:

(a)    Violations of Plaintiffs' legally protected federal, state and common law rights of commerce and privacy, especially related to unencrypted transmission of Plaintiffs and Class Members' confidential and sensitive user data;

(b)    Financial Harm due to the costs to purchase the defective

Samsung mobile device;

(c)  Financial Harm due to the time and expense to remedy the effects of Defendants' actions;

(d)  Financial Harm due to the time and expense to repair Plaintiffs' mobile devices and remedy the impaired operability caused by the Defendants;

(e)  Financial Harm due to the loss of property due to the inability to re-sell Plaintiffs' and Class Members' mobile devices due to the Carrier IQ application;

(f)  Financial Harm due to the loss of property due to the unauthorized access and use of Plaintiffs' and Class Members' confidential user data, depriving Plaintiffs and Class Members of such possession and use;

(g)  Financial Harm due to the Defendants' unauthorized use of Plaintiffs' and Class Member's mobile device's battery power, device memory, CPU, bandwidth and text messages during the unauthorized process of obtaining user data;

## VI.   FACTUAL ALLEGATIONS

### A. Background

38.   On October 26, 1999 the Wireless Communication and Public Act of 1999 was enacted and became known as the "e911 Act." It was an amendment to the Telecommunication Act of 1996. The purpose of the bill was to promote and enhance public safety through the use of 911 as universal assistance number. The Federal Law mandated that mobile phones be embedded with a Global Positioning System ("GPS") chip, which could calculate a user's coordinates to within a few yards by receiving signals from satellites. This law enacted to aid those in harm's way, resulted in the computing industry developing hardware and software to assist in the development of this technology or mobile devices provided Carrier IQ the impetus to originate a business plan to take advantage of

the benefit of embedded GPS chips in all mobile phones for its own commercial

benefit:

> This confluence of circumstances and events— rapid adoption
> of new wireless technologies, improved resiliency of service,
> increased data transmission rates, the e911 law requiring
> homing chips, and market precedents which show that mobile
> device users are willing to pay for wireless services or
> applications—establish the feature-rich wireless station as an
> increasingly logical and compelling channel for the free flow
> of communications, information, entertainment and
> commerce.

United States Patent No.: US 7,609,650 B2, COLLECTION OF DATA AT

TARGET WIRELESS DEVICES USING DATA COLLECTION PROFILES,

Assignee: Carrier IQ, Inc., Mountain View, CA (US), Filed: July 5, 2005.

39.     Carrier IQ's software is reportedly installed in excess of one hundred

and fifty million (150,000,000) mobile devices, including mobile devices

manufactured by Samsung. These devices installed with IQ Agent inherently

defective, and Defendants falsely advertised, marketed and distributing these

mobile devices, without disclosure of the material facts about the defect,

misrepresenting the performance of the devices, violating express and implied

warranties, thus rendering the mobile devices unable to be used for their intended

purposes. Such activities resulted in a pattern of covert mobile device

surveillance, wherein Defendants installed IQ Agent on Plaintiffs' and Class

Members' mobile device without authorization and consent, thereby committing

unauthorized access, collection, storage, and use of, the mobile device and data

derived from the Plaintiffs' and Class Members' use of the mobile devices and

transmitting information, code, and commands to collect, monitor, and remotely

store non-anonymized Plaintiffs' and Class Members' confidential mobile device

1  data. Defendants unauthorized access of this confidential, unencrypted data also

2  allowed access to *all* software and applications with log file access so that

3  Plaintiffs' and Class Members' data could be transmitted by multiple unknown

4  parties at any time, *like a pac-man creeping 150 million mobile phones and*

5  *"calling home."*

6       40.    The Samsung-version of the software, IQ Agent, is currently

7  preinstalled by Samsung on its Carrier IQ-enabled mobile devices and was also

8  installed via software updates on older Samsung devices.

9  **B. Carrier IQ: " See What Content They Consume Even Offline"**

10       41.    According to Carrier IQ, the software is designed to monitor,

11  manage and support mobile devices deployed across mobile operators, service

12  providers and enterprises. Carrier IQ's website explains:

13            [IQ Agent] provides a level of visibility into true customer

14            experience that was, previously unavailable in the mobile

15            industry. [IQ Agent]  uses data directly from the mobile phone

16            itself to give a precise view of how users interact with both

17            their phones and the services delivered through them, even if

18            the phone is not communicating with the network.

19  http://www.carrieriq.com/overview/IQInsightExperienceManager/index.htm (last

20  visited December 5, 2011).

21       42.    IQ Agent is a monitoring software that runs continuously in the

22  background reportedly to monitor device and application performance. When a

23  particular event or error associated with the device occurs, the software collects

24  data associated with the event or error and may upload it either in real time or at a

25  later time to its data repository for analysis.

26       43.    During the use of a mobile device in a mobile communication

27  network, parameter data defining conductors associated with the mobile device

28  and operation is generated. The mobile device also generates event data defining

1   events of the mobile device for the associated mobile user. Such events are

2   referred to as "Trigger points."

3       44.    IQ Agent is programmed to obtain qualifying characteristics which

4   may include device type, such as manufacturer and model, available memory and

5   battery life, the type of applications resident on the device, the geographical

6   location of the device, usage statistics, including a "profile" that characterizes a

7   user's interaction with a device, and the profile. Such mobile device

8   characteristics are referred to as "metrics."

9       45.    Carrier IQ's patent for "data collection associated with components

10   and services of a wireless communication network" explains the breadth of this

11   data collection,

12       Carrier IQ is able to query any metric from a device. A metric

13       can be a dropped call because of lack of service. The scope of

14       the word metric is very broad though, including device type,

15       such as manufacturer and model, available memory and

16       battery life, the type of applications resident on the device, the

17       geographical location of the device, the end user's pressing of

18       keys on the device, usage history of the device, including

19       those that characterize a user's interaction with a device.

20   http://www.faqs.org/patents/app/20110106942 (last accessed December 2,

21   2011).

22       46.    Carrier IQ provides a platform for data collection and management

23   system to dynamically generate and download to a population of wireless devices

24   rule-based data collection by coding its software to function when interfaced with

25   "trigger points" and to obtain "metrics." Data collection profiles may be

26   generated manually by a network administrator, a software developer or other

27   personnel involved in the operation of the network or "network administrators,"

28   created offline as a portion of a data analysis solution, or automatically generated

1  based on network .

2      47.    This parameter data and event data may be used to monitor a

3  network or used by an advertising system of the mobile communications network

4  to select an advertisement and the timing of the display of the advertisement, and

5  is necessary due to the problems associated with mobile advertising.

6      48.    Mobile Internet advertising currently consists of streaming graphic

7  files, in real time, into content rendered by a user's mobile device browser.

8  Mobile advertising systems though lack reliable browser tracking while

9  traditional online advertising relies on the use of browser cookies.

10  Implementations inherent in conventional mobile ad serving have effectively

11  prevented mobile advertising from being effective because of its inability to

12  obtain mobile device "uniqueness." In order to obtain such uniqueness, the

13  mobile advertising industry sought a means to obtain unique device identifiers

14  which provide a unique reference to individual mobile devices. Unlike traditional

15  cookies, such identifiers are hard coded into a user's phones software, and thus a

16  user has no ability to disable mobile device identifiers.

17      49.    Mobile Device "tracking" by use of mobile device identifiers is not

18  exactly comparable to any other type of tracking by advertising networks. This is

19  not anonymous data – but an exact ID that's unique to each physical device, and

20  if merged, with mobile device activities, including but not limited to, identifying

21  phone accessed user's physical locations, time of transmission, applications

22  downloaded, social network IDs,  providing unlimited advertising opportunities

23  (i.e., commercial value). Recording of a user's GPS, without their knowledge or

24  consent also provides a security harm to the mobile device user. When tracking a

25  user's location data on the mobile device, it is calculated to eight decimal points

26  that can be far more exact and accurate than any sort of geographically-based IP

27  address look-up on the web. Instead of getting a general location, location data on

28  a GPS-enabled mobile can identify user's precise latitude and longitude.

50.     The mobile device industry thus sought the technical means of synchronizing tracking code so that information about individual consumer behavior on mobile devices could be shared between companies and the unique device identifiers used in the majority of mobile devices would be put to this purpose. Carrier IQ initial patent was able to extract unique Identifiers from mobile devices:

Patent Title: COLLECTION OF DATA AT TARGET WIRELESS DEVICES USING DATA COLLECTION PROFILES SYSTEMS AND METHODS FOR USING DISTRIBUTED NETWORK ELEMENTS TO IMPLEMENT MONITORING AND DATA COLLECTION CONCERNING SELECTED NETWORK PARAMETERS.

Patent No.: US 7,609,650 B2

Assignee: Carrier IQ, Inc., Mountain View, CA (US)

Filed: July 5, 2005

Inventor: Konstantin Othmer

51.     The dilemma facing the mobile advertising industry is that once the mobile device data was extracted a system and method was needed to for wireless devices to use data for mobile advertising. Provided such a mechanism. While Carrier IQ may have concentrated on extraction of mobile device metrics, other companies were interested in assisting the mobile advertising networks to use mobile device data.

### C. IQ Agent Technology

     i.     *IQ Agent Collection of Unencrypted User Data Via Device "Log File"*

52.     Plaintiffs' independent investigation of the IQ Agent software revealed a number of interesting factors not found in any study or account by Samsung or Carrier IQ:

53.     To monitor use of a mobile device, IQ Agent collects user data by

utilizing the mobile device's "log file"—a storage file that records certain actions or events that occur on the device in real time, such as when the device is turned on or disconnected from a power source. The log file can be examined by any software or application with Android operating system permission to view it. Data is populated on the log file when software such as Samsung IQ Agent prompts the operating system to append an entry into the log file.

54.   IQ Agent specifically prompts mobile operating systems to populate log file data for a number of confidential events, including the following:

(a)   the contents of all incoming text messages;

(b)   the URLs of all websites visited; and

(c)   a user's GPS coordinates.

IQ Agent records this data on the log file in an unencrypted format, so the data is available to *any* device software or applications with log file permission. In other words, *any* software or application with Android operating system access can transmit and collect the user's incoming text messages, visited URLs and/or GPS coordinates because of the log file entries populated by IQ Agent. This log file access is typically granted to software and applications that a user installs from the market and a user would have no reason to believe that in granting "log file" access, he or she is also granting access to this unencrypted, confidential data.

55.   This puts users' confidential data at great risk. Even if the authors of the software and applications running on the mobile device have the best intentions, if these authors incorporate any third party code into their own software or applications (which is quite common), the users' data is exposed to these other third parties and is jeopardized.

ii.   *IQ Agent Transmission of User Data Via Periodic Scheduling and Remote Triggering*

56.   IQ Agent provides two mechanisms to transmit confidential data off

the device: periodic scheduling and remote triggering. The IQ Agent software provides specific "collection points" where the confidential data will be sent. One of these "collection points" encoded in the software is http://collector.sky.carrieriq.com:7001/collector/c?cm_sl=5. Data transmitted to this Carrier IQ server will remain unencrypted and unprotected during data transmission and receipt.

57.    IQ Agent can prompt a user's mobile device to send confidential data to Carrier IQ's server on a periodic schedule, e.g., once a week or once a month.  It can also prompt a user's device to send confidential data at any time via a "WAP push request" or a "text request." A WAP push request is a specially-formatted message delivered to the device over a mobile data or internet connection requesting transmission of data from the device. A user would be unaware that a WAP push request had been made to their device. A text request is a standard text message sent to the device with contents beginning with "//CM" or "//IQ." The contents of that message direct the device to transmit data from the device. This text message is "suppressed" or hidden to the operator, meaning that the user does not see the text message and is unaware that Carrier IQ or some other party has requested transmission of confidential data from the device.

       iii.    *IQ Agent Continuous Unauthorized Data Logging and Transmission*

58.    IQ Agent begins logging confidential user data the moment the user first purchases the mobile device and turns it on, without notice to or consent from the user. IQ Agent logs this data silently so that users have no knowledge the data is being logged or is available to any device software or applications with log file permission. The data is also transmitted silently so users are unaware that confidential data is being broadcast from their devices. Data is logged and transmitted even when the device is not in use.

59.     An average user will have no knowledge that the IQ Agent software is even running on his or her device, and the IQ Agent software does not appear on the device's application launch menu.

60.     A user is unable to stop the Carrier IQ software from running. When a user manually turns off the IQ Agent software, it automatically restarts itself seconds later. A user is unable to delete or remove the IQ Agent software from the device without voiding Samsung's manufacturer's warranty.

61.     Because the software is preinstalled by Samsung and runs as part of the device operating system, data is continuously collected and can be transmitted via wireless internet or other means, even if the device user has no carrier contract and the mobile device is not connected to a mobile network.

        iv.     *IQ Agent Depletion of Resources*

62.     Because IQ Agent runs continuously and silently, it depletes device resources without notice to or authorization from the user. These depleted resources include:

        (a)     battery power (required to run the device while activity such as data logging and transmission occurs);

        (b)     device memory (used to log confidential user data and receive and respond to WAP push requests and/or text requests);

        (c)     CPU (also known as "central processing unit" used to process the instructions and perform the functions required by the IQ Agent software);

        (d)     bandwidth (used to transmit and receive data according to IQ Agent instructions); and

        (e)     text messages (IQ Agent's hidden text request function indicates a text has been received by the user even when the user cannot see it, and may result in a charges to users who pay for a finite number of texts per month).

**D. Samsung's Warranty**

63.     There is no choice to "opt in" to Carrier IQ's data collection and transmission by downloading IQ Agent since in many cases it is preinstalled or installed via automatic update on Plaintiffs' and Class Members' mobile devices. Users cannot uninstall it, block it, or cease its actions. Samsung and Carrier IQ provide Plaintiffs and Class Members no notice of this software or the functions it performs.

64.     Samsung's Manufacturer's Warranty for the Samsung mobile devices does not mention or disclose the existence of the IQ Agent software on the device or the functions that software performs.

65.     Samsung's Manufacturer's Warranty states that the Warranty will be void if a user alters the operating system or opens or tampers with the device's software, which would include deleting or attempting to delete the IQ Agent software from the device.

**E. Defendants' Harmful Business Practices**

66.     Defendants' business practice unfairly wrests the user's control and consumes the resources of the Plaintiffs' and Class Members' mobile devices by gathering information, populating such information in an unencrypted format in their mobile log file, and transferring such information to storage for subsequent use. Defendants caused harm and damages to Plaintiffs' and Class Members' mobile devices finite resources, depleted and exhausted its battery power, memory, CPU bandwidth and text, thus causing an actual inability to use it for its intended purposes and resulting in instability issues.

67.     Defendants' collection and disclosure of this personal information violates user expectations, diminished user's privacy, and contradicted the Samsung's own representations. These business practices are unfair and deceptive trade practices as set forth further below.

68.     Defendants harmed Plaintiffs and Class Members when they

purchased the Samsung device IQ Agent. In selecting the Samsung mobile device over the service and goods of other competing mobile phone manufacturers, Plaintiffs and Class Members reasonably expected that their confidential user data would not be accessed and transmitted to third parties without their knowledge and consent.

69.     Defendants harmed Plaintiff and Class Members by obtaining their confidential user data and device resources.

70.     Carrier IQ exercises substantial control over its development and functionality on Samsung's mobile devices. Carrier IQ and Samsung must agree to the terms of Carrier IQ's License Agreement in order to have Carrier IQ function on Samsung mobile device. Carrier IQ will only function on mobile devices by interacting with a mobile device's operating system and features in the ways permitted by such an agreement.

71.     Carrier IQ's control of the user experience includes restrictions, such as blocking consumers from modifying its software. As a direct consequence of the control exercised by Carrier IQ, Plaintiffs and the Class cannot reasonably review the privacy effects of IQ Agent.

72.     Defendants' activities, made the basis of this action include, but are not limited to, economic harm due to the unauthorized use of Plaintiffs' and Class Members' bandwidth, the amount of data that can be transmitted across a channel in a set amount of time. Any transmission of information on the internet includes bandwidth. Similar to utility companies, such as power or water, the "pipeline" is a substantial capital expenditure, and bandwidth usage controls the pricing model. Hosting providers charge user's for bandwidth because their upstream provider charges them and so forth until it reaches the "back bone providers". Retail providers purchase it from wholesalers to sell its consumers.

73.     Defendants' activities made the basis of this action consume vast amounts of bandwidth, slowing a user's internet connection by using their

1  bandwidth, in addition to diminishing the mobile devices "battery life," CPU and

2  device memory in order to send, store and retrieve metric data.

3      74.    Plaintiffs and Class Members were afforded only a millisecond of

4  time after activating their Samsung mobile device before IQ Agent intentionally,

5  and without users' authorization and consent, accessed Plaintiffs' and Class

6  Members' mobile device. While only the most tech savvy mobile device users

7  are familiar with IQ Agent's activity, even a more finite amount of individuals

8  know how to actually remove IQ Agent, let alone recognize the risk of that

9  software to their confidential user data.

10  **VII.    CLASS ACTION ALLEGATIONS**

11      75.    Plaintiffs bring this action pursuant to Rule 23(a) and 23(b)(1)-(3) of

12  the Federal Rules of Civil Procedure on behalf of themselves and all others

13  similarly situated, as members of the proposed nationwide Class ("Nationwide

14  Class"), defined as follows:

15              All consumers in the United States who purchased and used

16              a Samsung mobile device on which the IQ Agent software

17              resides from December 4, 2007 to December 4, 2011.

18      76.    Plaintiffs also bring certain of the claims on behalf of itself and a

19  portion of the class described as the Texas subclass ("Texas Subclass"), defined

20  as follows:

21              All consumers residing within the State of Texas who

22              purchased and used a Samsung mobile device on which the

23              IQ Agent software resides from December 4, 2007 to

24              December 4, 2011.

25      77.    Excluded from the Nationwide Class and Texas Subclass are the

26  officers, directors, and employees of Carrier IQ and Samsung, and their

27  respective legal representatives, heirs, successors and assigns.

28      78.    This action is brought as a class action and may properly be so

maintained pursuant to the provisions of Federal Rule of Civil Procedure 23. Plaintiffs reserve the right to modify the Nationwide Class and the Texas Subclass definitions and the class period pursuant to discovery that is conducted hereafter.

79.    The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs estimate that there are hundreds of thousands of consumers who purchased Samsung mobile devices installed with the IQ Agent software.

80.    There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

(a)    whether Defendants omitted, misrepresented or otherwise failed to notify Class Members of the fact that IQ Agent was installed on Plaintiffs' and Class Members' mobile devices;

(b)    whether Defendants omitted, misrepresented or otherwise failed to notify Class Members of the fact that IQ Agent logs unencrypted data in the device log file that includes incoming text messages, visited URLs and GPS location coordinates;

(c)    whether Defendants omitted, misrepresented or otherwise failed to notify Class Members of the fact that IQ Agent utilizes finite device resources such as battery power, device memory, CPU, bandwidth and text messages;

(d)    whether Defendants' conduct violates the federal Electronic Communications Privacy Act

(e)    whether Defendants' conduct violates the federal Stored Communications Act;

(f)    whether Defendants' conduct violates California's Consumers Legal Remedies Act;

(g)    whether Defendants' conduct violates Texas's Deceptive Trade Practices Act;

(h)    whether Defendants were negligent in their failure to disclose the presence of IQ Agent on Plaintiffs' and Class Members' mobile devices and/or their failure to seek Plaintiffs' and Class Members' consent prior to logging, collecting and transmitting confidential user data;

(i)    whether Defendants' conduct constitutes trespass; and

(j)    whether Defendants were unjustly enriched from their conduct, and whether they must disgorge profits to Plaintiffs and Class Members.

81.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests antagonistic to those of the Class and are subject to no unique defenses.

82.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

83.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

(a)    It is economically impractical for each member of the Class to prosecute individual actions;

(b)    The Class is readily definable;

(c)    Prosecution as a class action will eliminate the possibility of repetitious litigation;

(d)    A class action will enable claims to be handled in an orderly and expeditious manner;

(e)    A class action will save time and expense and will ensure uniformity of decisions; and

(f)    Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

84.   Defendants have acted and refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

85.   Plaintiff believes that notice to the Class is necessary and proposes that notice of this class action be provided by individual mailings to Class members and/or by publication in national publications.

## III.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510

### Against All Defendants

86.   Plaintiffs incorporate by reference all paragraphs previously alleged herein.

87.   Plaintiffs assert this claim against each and every Defendant named herein in this complaint on behalf of themselves and the Class.

88.   The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, referred to as "ECPA," regulates wire and electronic communications interception and interception of oral communications, and makes it unlawful for a person to "willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

89.   Defendants violated 18 U.S.C. § 2511 by intentionally acquiring and/or intercepting, by device or otherwise, Plaintiffs' and Class Members' electronic communications, without knowledge, consent, or authorization.

90.   At all relevant times, Defendants engaged in business practices of intercepting and collecting the Plaintiffs' and Class Members' confidential electronic communications which included incoming text messages, URLs of websites viewed and GPS coordinates from within their mobile devices. Once Defendants obtained this confidential personal information, Defendants used it to

aggregate mobile device data regarding Plaintiffs' and Class Members' uses of their mobile devices. Defendants also made this confidential and unencrypted data available to any device software or application with log file access, further violating Plaintiffs' and Class Members' privacy.

91.     The contents of data transmissions from and to Plaintiffs' and Class Members' personal computers constitute "electronic communications" within the meaning of 18 U.S.C. §2510.

92.     Plaintiffs and Class Members are "person[s] whose ... electronic communication is intercepted ... or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

93.     Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept Plaintiffs' and Class Members' electronic communications.

94.     Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and Class Member's electronic communications.

95.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using, or endeavoring to use, the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and Class Members' electronic communications.

96.     Defendants' intentional interception of these electronic communications without Plaintiffs' or Class Members' knowledge, consent, or authorization was undertaken without a facially valid court order or certification.

97.     Defendants intentionally used such electronic communications, with

1  knowledge, or having reason to know, that the electronic communications were

2  obtained through interception, for an unlawful purpose.

3       98.    Defendants unlawfully accessed and used, and voluntarily disclosed,

4  the contents of the intercepted communications to enhance their profitability and

5  revenue through manufacturer contracts and advertising. This access and

6  disclosure was not necessary for the operation of Defendants' system or to

7  protect Defendants' rights or property.

8       99.    The Electronic Communications Privacy Act of 1986, 18 USC

9  §2520(a) provides a civil cause of action to "any person whose wire, oral, or

10  electronic communication is intercepted, disclosed, or intentionally used" in

11  violation of the ECPA.

12       100.   Defendants are liable directly and/or vicariously for this cause of

13  action. Plaintiffs therefore seek remedy as provided for by 18 U.S.C. §2520,

14  including such preliminary and other equitable or declaratory relief as may be

15  appropriate, damages consistent with subsection (c) of that section to be proven

16  at trial, punitive damages to be proven at trial, and a reasonable attorney's fee and

17  other litigation costs reasonably incurred.

18       101.   Plaintiffs and Class Members have additionally suffered loss by

19  reason of these violations, including, without limitation, violation of the right of

20  privacy. Defendants exposed Plaintiffs' and Class Members' personal

21  information to any third party software or application with log file access residing

22  on their mobile devices without Plaintiffs' or Class Members' permission or

23  knowledge, and in an unencrypted format. Plaintiffs and Class Members were

24  damaged by Defendants' unauthorized use of the resources of Plaintiff's and

25  Class Members' mobile devices including battery power, device memory, CPUs,

26  and bandwidth. Plaintiffs and Class Members had unauthorized charges to their

27  mobile devices for every hidden text message that was sent by Defendants.

28       102.   Plaintiffs and the Class, pursuant to 18 U.S.C. §2520, are entitled to

preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendants' profits obtained from the above-described violations. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs' and Class Members' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs and Class Members to remedies including injunctive relief as provided by 18 U.S.C. § 2510.

## SECOND CAUSE OF ACTION

### Violation of the Stored Communications Act, 18 U.S.C. §2701

### Against All Defendants

103.   Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

104.   The Stored Communications Act prohibits persons from accessing without authorization a device through which an electronic communications service is provided (18 U.S.C. §2701).

105.   Defendants were engaged in the sale of mobile devices to consumers during the class period.

106.   Defendants intentionally accessed and collected the personal data of Plaintiffs and Class Members on their mobile devices without notice or authorization, including incoming text messages, URLs of websites viewed and GPS coordinates.

107.   As a result of Defendants' unlawful violation of this section, Plaintiffs and Class Members have been damaged by among other things, failing to receive the benefits of a product impliedly represented to them as secure as to their personal information. Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including violation of their rights of privacy. Defendants exposed Plaintiffs' and Class Members' personal

1  information to any third party software or application with log file access residing

2  on their mobile devices without Plaintiffs' or Class Members' permission or

3  knowledge, and in an unencrypted form. Plaintiffs and Class Members were

4  damaged by Defendants' unauthorized use of the resources of Plaintiffs' and

5  Class Members' mobile devices including battery power, cell phone memory,

6  CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had unauthorized

7  charges to their mobile devices for every hidden text message that was sent by

8  Defendants.

9        108.   Plaintiffs and Class Members have been harmed by Defendants'

10 unlawful violations of this section and are therefore entitled to relief in the form

11 of damages, costs and disbursements, including costs of investigation and

12 reasonable attorney's fees and are entitled to equitable relief as determined by

13 this Court.

### THIRD CAUSE OF ACTION

### Violation of the Consumer Legal Remedies Act

### ("CLRA") California Civil Code § 1750, *et seq.*

### Against All Defendants

18       109.   Plaintiffs incorporate the foregoing allegations as if fully set forth

19 herein.

20       110.   In violation of Civil Code §1750, et seq. (the "CLRA"), Defendants

21 have engaged and are engaging in unfair and deceptive acts and practices in the

22 course of transactions with Plaintiffs, and such transactions are intended to and

23 have resulted in the sales of services to consumers. Plaintiffs and the Class

24 Members are "consumers" as that term is used in the CLRA because they sought

25 or acquired Defendants' goods or services for personal, family, or household

26 purposes.

27       111.   At all relevant times, Defendants' business practices of selling

28 Samsung mobile devices installed or updated with IQ Agent software, were

1  goods Plaintiffs and Class Members obtained for use. Defendants' scheme to

2  offer such goods misled Plaintiffs and Class Members about the nature and

3  integrity of the Samsung mobile devices since Defendants intended to use such

4  for mobile device tracking, collection of confidential, unencrypted user data, and

5  depletion of consumer resources, including battery power, device memory,

6  CPUs, and bandwidth. Defendants also charged consumers for every hidden text

7  message that was sent by Defendants.

8      112.  Defendants represented that their services had characteristics, uses,

9  and benefits that they do not have, in violation of Civil Code § 1770(a)(5).

10  Defendants represented privacy and "reliable, worry-free service" as a

11  characteristic of the mobile devices that they did not have.  Defendants

12  intercepted and collected Plaintiffs' and Class Members' electronic

13  communications which included incoming text messages, URLs of websites

14  viewed and GPS coordinates from within their mobile devices. Once Defendants

15  obtained this personal information, Defendants used it to aggregate mobile device

16  data of Plaintiffs and Class Members as they used their mobile device.

17  Defendants made this personal information available, unencrypted, to any third

18  party software or applications with log file access on the device and further

19  violated Plaintiffs' and Class Members' privacy.

20      113.  In addition, Defendants' modus operandi constitutes an unfair

21  practice in that Defendants knew, or should have known, that consumers care

22  about the status of personal information regarding visited websites, GPS location

23  and text privacy but were unlikely to be aware of the manner in which

24  Defendants failed to fulfill their commitments with respect to the consumers'

25  privacy.

26      114.  Defendants' acts and practices were deceptive and unfair because

27  they were likely to mislead the members of the public to whom they were

28  directed.

115.   Plaintiffs and Class Members have suffered loss by reason of these violations, including, without limitation, violation of the right of privacy. Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or application with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiffs' and Class Members' mobile devices including battery power, cell phone memory, CPUs, and bandwidth.  Moreover, Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

116.   Plaintiffs, on behalf of themselves and on behalf of each member of the Class, shall seek individual restitution, injunctive relief, and other relief as the Court deems just and proper.

117.   Pursuant to California Civil Code, Section 1782, Plaintiffs will notify Defendants in writing of the particular violations of Civil Code, Section 1770 and demand that Defendants rectify the problems associated with its behavior detailed above, which acts and practices are in violation of Civil Code Section 1770.

## FOURTH CAUSE OF ACTION

**Violation of Unfair Competition California Business and Professions Code §**

**17200**

### Against All Defendants

118.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

119.   In violation of California Business and Professions Code Section 17200 et seq., Defendants' conduct in this regard is ongoing and includes, but is not limited to, unfair, unlawful and fraudulent conduct.

120.   At all relevant times, Defendants' business practices as alleged

above constitute unlawful, unfair and fraudulent business acts and practices.

121.   Defendants engaged in these unfair and fraudulent practices to increase their profits. Plaintiffs were injured and damaged by being forced to relinquish—without consent or knowledge—confidential and personal user data, device battery power, device memory, CPUs, and bandwidth. Plaintiffs were also unfairly charged for every hidden text message that was sent by Defendants.

122.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiffs and the Class have suffered injury-in-fact and have lost money and/or property.

A. **Unlawful Business Act and Practices**

123.   Defendants' business acts and practices are unlawful, in part, because they violate the Electronic Communications Privacy Act, 18 U.S.C. Section 2510 which prohibits any person from willfully intercepting or endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication, including incoming text messages.

124.   Defendants' business acts and practices are also unlawful in that they violate the Stored Communications Act, 18 U.S.C. Section 2701, California Consumer Legal Remedies Act, California Civil Code §1750, and California Penal Code, § 502 among other statutes.

B. **Unfair Business Act and Practices**

125.   Defendants' business acts and practices are unfair because they cause harm and injury-in-fact to Plaintiffs and Class Members and for which Defendants have no justification other than to increase revenues from the unauthorized use of personal information.

126.   Defendants' conduct lacks reasonable and legitimate justification in that Defendants have benefited from such conduct and practices while Plaintiffs

and the Class Members have been misled as to the nature and integrity of Defendants' services and have, in fact, suffered injury regarding the privacy and confidentiality of their personal information and the use of their device resources. Defendants' conduct offends public policy in California in connection with the Consumer Legal Remedies Act, the state constitutional right of privacy, and California statutes recognizing the need for consumers to safeguard their own privacy interests, including California Civil Code, Section 1798.80.

127.   In addition, Defendants' actions constitute an unfair practice in that Defendants knew, or should have known, that consumers care about the status of personal information regarding visited websites, GPS location and text privacy but were unlikely to be aware of the manner in which Defendants failed to fulfill their commitments with respect to the consumers' privacy.

128.   Defendants' acts and practices were fraudulent within the meaning of the Unfair Competition Law because they were likely to mislead the consumers.

129.   Defendants' practice of capturing, storing, and transferring highly detailed and personal records of consumers' incoming text messages, URLs of websites visited and GPS location histories, and storing such information in unencrypted form, is in violation of the Unfair Competition Law. Plaintiffs and Class Members have suffered loss by reason of these violations, including, violation to their right of privacy.  Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or applications with log file access residing on their mobile devices without Plaintiffs' or Class Members' consent or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had to pay unauthorized charges to their mobile devices for every hidden text

1 message that was sent by Defendants.

2 ## FIFTH CAUSE OF ACTION

3 ### Violation of California's Computer Crime Law

4 ### Penal Code § 502 et seq.

5 ### Against All Defendants

6 130. Plaintiffs incorporate the above allegations by reference as if set
7 forth herein at length.

8 131. The California Computer Crime Law, California Penal Code Section
9 502 regulates "tampering, interference, damage, and unauthorized access to
10 lawfully created computer data and computer systems." A mobile device is a
11 "computer system" as defined in Penal Code Section 502(b)(5) in that it contains
12 electronic instructions, inputs and outputs data, performs functions including
13 communication and data storage and retrieval.

14 132. Defendants violated California Penal Code § 502 by knowingly
15 accessing, copying, using, making use of, interfering, and/or altering, data
16 belonging to Plaintiffs and Class Members: (1) in and from the State of
17 California; (2) in the home states of the Plaintiffs and Class Members; and (3) in
18 the state in which the servers that provided the communication link between
19 Plaintiffs and the applications they interacted with were located.

20 133. At all relevant times, Defendants had a business practice of
21 accessing Plaintiffs' and Class Members' mobile devices on a systematic and
22 continuous basis in order to obtain mobile device data and to monitor and collect
23 data related to their browsing habits, GPS locations and incoming text messages.
24 Defendants accessed such data without notice to or authorization from Plaintiffs
25 or Class Members.

26 134. Pursuant to California Penal Code § 502(b)(1), "Access means to
27 gain entry to, instruct, or communicate with the logical, arithmetical, or memory
28 function resources of a computer, computer system, or computer network."

135.   Pursuant to California Penal Code § 502(b)(6), "Data means a representation of information, knowledge, facts, concepts, computer software, computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device."

136.   Defendants have violated California Penal Code § 502(c)(1) by knowingly accessing and without permission, altering, and making use of data from Plaintiffs' and Class Members' mobile devices in order to devise and execute business practices to deceive Plaintiffs and Class Members into surrendering private electronic communications, and to wrongfully obtain valuable private data and device resources from Plaintiffs and Class Members.

137.   Defendants have violated California Penal Code § 502(c)(2) by knowingly accessing and without permission, taking, or making use of data from Plaintiffs' and Class Members' mobile devices.

138.   Defendants have violated California Penal Code § 502(c)(3) by knowingly and without permission, using and causing to be used Plaintiffs' and Class Members' mobile computing devices' services and resources.

139.   Defendants have violated California Penal Code section 502(c)(4) by knowingly accessing and, without permission, adding and/or altering the data from Plaintiffs' and Class Members' computers, including application code installed on such computers.

140.   Defendants have violated California Penal Code § 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiffs' mobile device and mobile device system.

141.   Defendants has violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiffs' mobile device and mobile device system.

142.   California Penal Code § 502(j) states: "For purposes of bringing a

civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

143.    Plaintiffs and Class Members have suffered loss by reason of these violations, including, without limitation, violation of the right of privacy. Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or application with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

144.    Plaintiffs have also suffered irreparable injury from these unauthorized acts of disclosure, to wit: their personal, private, and sensitive electronic data was obtained and used by Defendant. Due to the continuing threat of such injury, Plaintiffs have no adequate remedy at law, entitling Plaintiffs to injunctive relief.

145.    Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy and depletion of valuable device resources.

146.    As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused loss to Plaintiffs in an amount to be proven at trial. Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

147.    Plaintiffs and the Class Members seek compensatory damages, in an

1  amount to be proven at trial, and injunctive or other equitable relief.

## SIXTH CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act

### Penal Code § 630 et seq.

### Against All Defendants

148.   Plaintiffs incorporate the above allegations by reference as if set forth herein at length.

149.   California Penal Code Section 630 provides, in part:

> Any person who, . . . or who willfully and without the
> consent of all parties to the communication, or in any
> unauthorized manner, reads, or attempts to read, or to
> learn the contents or meaning of any message, report, or
> communication while the same is in transit or passing
> over any wire, line, or cable, or is being sent from, or
> received at any place within this state; or who uses, or
> attempts to use, in any manner, or for any purpose, or to
> communicate in any way, any information so obtained,
> or who aids, agrees with, employs, or conspires with
> any person or persons to unlawfully do, or permit, or
> cause to be done any of the acts or things mentioned
> above in this section, is punishable. . . .

150.   At all relevant times, Defendants engaged in a business practice of accessing the mobile device data of the Plaintiffs and Class Members without their authorization and consent and systematically logging and collecting their incoming text messages, URLs of websites viewed and GPS coordinates. Defendants made this personal data available to all third party software or applications with log file access on the mobile devices of Plaintiffs and Class Members in an unencrypted form, without the consent or authorization of

1   Plaintiff or Class Members.

2       151.   On information and belief, each Plaintiff and each Class Member,

3   during one or more of their interactions on their mobile device, including receipt

4   of text messages and URL browsing, communicated with one or more web

5   entities based in California, or with one or more entities whose servers were

6   located in California.

7       152.   Communications from the California web-based entities to Plaintiffs

8   and Class Members were sent from California. Communications to the California

9   web-based entities from Plaintiffs and Class Members were sent to California.

10       153.   Plaintiffs and Class Members did not consent to any of the

11   Defendants' actions in intercepting, reading, and/or learning the contents of their

12   communications with such California-based entities.

13       154.   Plaintiffs and Class Members did not consent to any of the

14   Defendants' actions in using the contents of their communications with such

15   California-based entities.

16       155.   Neither Defendant is a " public utility engaged in the business of

17   providing communications services and facilities . . .."

18       156.   The actions alleged herein by the Defendants were not undertaken

19   "for the purpose of construction, maintenance, conduct or operation of the

20   services and facilities of the public utility."

21       157.   The actions alleged herein by the Defendants were not undertaken in

22   connection with "the use of any instrument, equipment, facility, or service

23   furnished and used pursuant to the tariffs of a public utility."

24       158.   The actions alleged herein by Defendants were not undertaken with

25   respect to any telephonic communication system used for communication

26   exclusively within a state, county, city and county, or city correctional facility.

27       159.   Defendants directly participated in intercepting, reading, and/or

28   learning the contents of the communications between Plaintiffs, Class Members

and California-based web entities.

160.   Alternatively, and of equal violation of the California Invasion of Privacy Act, Samsung aided, agreed with, and/or conspired with Carrier IQ to unlawfully do, or permit, or cause to be done all of the acts complained of herein.

161.   Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy. Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or application with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

162.   Unless restrained and enjoined, Defendants will continue to commit such acts. Pursuant to § 637.2 of the California Penal Code, Plaintiffs and the Class have been injured by the violations of California Penal Code Section 631. Wherefore, Plaintiffs, on behalf of themselves and on behalf of a similarly situated Class of consumers, seek damages and injunctive relief.

## SEVENTH CAUSE OF ACTION

### Violation of the Song-Beverly Warranty Act, California Civil Code §1792

### Against All Defendants

163.   Plaintiffs hereby incorporate by reference the allegations contained in all the paragraphs of this Complaint.

164.   Samsung warranted to Plaintiffs and Class Members in its "Manufacturer's Warranty" that the mobile devices would be free from defects for normal consumer usage for twelve months from the date of purchase.

165.   Samsung by offering mobile devices in the marketplace represented and warranted to Plaintiffs and Class Members that these devices did not cause personal information to be unreasonably and unexpectedly transferred to third parties.

166.   Plaintiffs and Class Members paid more for their mobile devices than they would have paid if Samsung disclosed the fact that the mobile devices were designed with defects, namely the privacy breach to Carrier IQ and any other third party software on the mobile device.

167.   A reasonable consumer would, and Plaintiffs and Class Members did expect that, if Samsung mobile devices were subject to defects such as those identified above, Samsung would disclose these material facts and Plaintiffs and Class Members would not have purchased these devices.

168.   Plaintiffs and Class Members paid premiums for Samsung mobile devices because they reasonably believed the devices were designed to employ reasonable security in their operation.

169.   Samsung's failure to meet the specifications of the mobile devices violates the express and implied warranties under the Song-Beverly Warranty Act, California Civil Code §1792 et.seq.

170.   Moreover, Samsung asserts that disabling the Carrier IQ software on a mobile device voids the Samsung Warranty.  Plaintiffs and Class Members are therefore forced to induce breach of the Samsung Warranty by disabling the Carrier IQ software to protect their personal information.

171.   Plaintiffs and Class Members who purchased the mobile devices are entitled to a refund of the purchase price.

## EIGHTH CAUSE OF ACTION

**Texas Deceptive Trade Practices Act, Business and Commerce**

**Code § 17.41 et seq.**

**Against All Defendants**

172.   Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

173.   Plaintiffs are "consumers" under the Texas Deceptive Trade Practices Act as they purchased and used Samsung mobile devices that had been preinstalled with the Carrier IQ tracking program.

174.   Defendants are proper "persons" or defendants under the Texas Deceptive Trade Practices Act, who either used or employed false, misleading, deceptive or unconscionable acts or practices, or were directly connected with the transaction with Plaintiffs.

175.   Defendants committed multiple violations and wrongful acts under the Texas Deceptive Trade Practices Act, including the following: making or committing, false, misleading or deceptive acts and/or practices, including but not limited to violations of Tex. Business & Commerce Code § 17.46(b) (3), (5), (7), (9), (20), and (24). Defendants committed misleading and unconscionable acts in connection with the sale of mobile devices installed or updated with IQ Agent to Plaintiffs and Class Members, and the subsequent tracking and logging of Plaintiffs' and Class Members' confidential, unencrypted through IQ Agent without notice or consent. In carrying out these acts, Defendants depleted Plaintiffs' and Class Members' mobile device resources without notice to or consent from Plaintiffs or Class Members. Plaintiffs and Class Members relied on Defendants' acts and/or practices to their detriment.

176.   Plaintiffs will show that the violation and actions of Defendants were a producing cause of their damages.  Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or applications with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of Plaintiffs' and Class Members' mobile device resources including battery power, cell phone

memory, CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

177.   Plaintiffs will show that the violations and actions of Defendants were done intentionally or knowingly, entitling Plaintiffs to treble damages.

178.   Plaintiffs will show that the violations and actions of Defendants entitle them to reasonable and necessary attorney's fees under the Texas Deceptive Trade Practices Act, specifically Tex. Business & Commerce Code § 17.50(d).

## NINTHCAUSE OF ACTION
### Breach of Express Warranty
### Against Defendant Samsung

179.   Plaintiffs hereby incorporate by reference the allegations contained in all the paragraphs of this Complaint.

180.   Samsung warranted to Plaintiffs and Class Members in its "Manufacturer's Warranty" that the mobile devices would be free from defects for normal consumer usage for twelve months from the date of purchase.

181.   Samsung by sold mobile devices to Plaintiffs and Class Members that were defective because they caused personal information to be unreasonably and unexpectedly viewed and collected by Carrier IQ and other third party software and applications. The devices also were subject to depletion of resources through the IQ Agent software which depleted those resources without notice to or authorization from Plaintiffs or Class Members.

182.   Plaintiffs and Class Members paid more for their mobile devices than they would have paid if Samsung disclosed the fact that the mobile devices were designed with defects, namely the privacy breach and depletion of mobile device resources.

183.   A reasonable consumer would, and Plaintiffs and Class Members

1  did expect that, if Samsung mobile devices were subject to defects such as those

2  identified above, Samsung would disclose these material facts and Plaintiffs and

3  Class Members would not have purchased these devices.

4      184.   Plaintiffs and Class Members paid premiums for Samsung mobile

5  devices because they reasonably believed the devices were designed to employ

6  reasonable security in their operation.

7      185.   Samsung's failure to provide to Plaintiffs and Class Members a

8  mobile device that is not defective is a violation of Samsung's express warranty.

9      186.   Moreover, Samsung asserts that disabling the Carrier IQ software on

10 a mobile device voids the Samsung warranty. Plaintiffs and Class Members are

11 therefore forced by Samsung to induce breach of the Samsung Warranty by

12 disabling the Carrier IQ software to protect their personal information.

13     187.   Plaintiffs and Class Members who purchased the mobile devices are

14 entitled to a refund of the purchase price.

<div align="center">

**TENTH CAUSE OF ACTION**

**Breach of Implied Warranty**

**Against Defendant Samsung**

</div>

18     188.   Plaintiffs hereby incorporate by reference the allegations contained

19 in all the paragraphs of this Complaint.

20     189.   Samsung by offering mobile devices in the marketplace represented

21 and warranted to Plaintiffs and Class Members that these devices would be free

22 from defects for normal consumer usage and would not cause personal

23 information to be unreasonably and unexpectedly transferred to third parties.

24     190.   Samsung by sold mobile devices to Plaintiffs and Class Members

25 that were defective because they caused personal information to be unreasonably

26 and unexpectedly viewed and collected by Carrier IQ and other third party

27 software and applications. The devices also were subject to depletion of resources

28 through the IQ Agent software which depleted those resources without notice to

1 │ or authorization from Plaintiffs or Class Members.

2 │     191.   Plaintiffs and Class Members paid more for their mobile devices

3 │ than they would have paid if Samsung disclosed the fact that the mobile devices

4 │ were designed with defects, namely the privacy breach and depletion of mobile

5 │ device resources..

6 │     192.   A reasonable consumer would, and Plaintiffs and Class Members

7 │ did expect that, if Samsung mobile devices were subject to defects such as those

8 │ identified above, Samsung would disclose these material facts and Plaintiffs and

9 │ Class Members would not have purchased these devices.

10 │     193.   Plaintiffs and Class Members paid premiums for Samsung mobile

11 │ devices because they reasonably believed the devices were designed to employ

12 │ reasonable security in their operation.

13 │     194.   Samsung's failure to provide to Plaintiffs and Class Members a

14 │ mobile device that is not defective is a violation of Samsung's implied warranty.

15 │     195.   Plaintiffs and Class Members who purchased the mobile devices are

16 │ entitled to a refund of the purchase price.

17 │ <center>**ELEVENTH CAUSE OF ACTION**</center>

18 │ <center>**Negligence**</center>

19 │ <center>**Against All Defendants**</center>

20 │     196.   Plaintiffs incorporate the above allegations by reference as if fully

21 │ set forth herein.

22 │     197.   Carrier IQ and Samsung owed a duty of care to Plaintiffs and Class

23 │ Members.

24 │     198.   Carrier IQ and Samsung breached their duty by negligently

25 │ designing IQ Agent and preinstalling or uploading it to Plaintiffs' and Class

26 │ Members' mobile devices without any notice or authorization so that Defendants

27 │ could acquire personal information without Plaintiffs' and Class Members'

28 │ knowledge or permission. Defendants also negligently made this confidential

data available to any software or application with log file access on the mobile device, in an unencrypted format. Defendants also negligently depleted Plaintiffs' and Class Members' mobile device resources.

199.   Carrier IQ and Samsung failed to fulfill their own commitments to Plaintiffs and Class Members, and further failed to fulfill even the minimum duty of care to protect Plaintiffs' and Class Members' personal information, privacy rights, security, and device resources.

200.   Samsung's unencrypted storage of Plaintiffs' and Class Members' on the mobile device log file and Carrier IQ servers was negligent.

201.   Plaintiffs and Class Members were harmed as a result of Carrier IQ's breaches of its duty, and Carrier IQ proximately caused such harms.

202.   Samsung's failure to fulfill its commitments included allowing Carrier IQ's practice of preinstalling IQ Agent on Samsung mobile device users' devices without notice or authorization and then permitting Carrier IQ to collect unencrypted data in the log file and make it available, unencrypted, to third party software and applications with log file access on the devices. Samsung engaged in these activities without notice to or consent from Plaintiffs and Class Members.

203.   Samsung's preinstallation or upload of IQ Agent and unauthorized use of Plaintiffs' and Class Members' confidential information without notice to or consent from Plaintiffs or Class Members was negligent.

204.   Defendants exposed Plaintiffs' and Class Members' personal information to any third party software with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of their mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had unauthorized charges to their mobile devices for every

hidden text message that was sent by Carrier IQ.

205.   Plaintiffs and Class Members were harmed as a result of Defendants' breaches of their duty, and Defendants proximately caused such harms.

<div align="center">

### TWELFTH CAUSE OF ACTION

### Trespass to Personal Property/Chattels

### Against All Defendants

</div>

206.   Plaintiffs incorporate by reference all paragraphs previously alleged herein.

207.   The common law prohibits the intentional intermeddling with personal property, including a mobile device, in possession of another which results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property.

208.   By engaging in the acts alleged in this complaint without the authorization or consent of Plaintiffs and Class Members, Defendants dispossessed Plaintiffs and Class Members from use and/or access to their mobile devices, or parts of them. Further, these acts impaired the use, value, and quality of Plaintiffs' and Class Members' mobile devices. Defendants' acts constituted an intentional interference with the use and enjoyment of their mobile devices. By the acts described above, Defendants have repeatedly and persistently engaged in trespass to personal property in violation of the common law.

209.   Without Plaintiffs' and Class Members' consent, or in excess of any consent given, Defendants knowingly and intentionally accessed Plaintiffs' and Class Members' property, thereby intermeddling with Plaintiffs' and Class Members' right to possession of the property and causing injury to Plaintiffs and the members of the Class.

210.   Defendants engaged in deception and concealment in order to gain access to Plaintiffs' and Class Members' mobile devices.

211.   Defendants undertook the following actions with respect to Plaintiffs' and Class Members' mobile devices:

212.   Defendants  accessed and obtained control over the users' mobile device;

213.   Defendants caused the installation of code on the hard drives of the mobile devices;

214.   Defendants programmed the operation of its code to circumvent the mobile device owners' privacy and security controls, to remain beyond their control, and to continue to function and operate without notice to them or consent from Plaintiffs and Class Members;

215.   Defendants obtained users' personal information by logging confidential data in the log file;

216.   Defendants utilized users' mobile device resources as part of logging confidential data; and

217.   Defendants used the log file data to obtain information about the mobile browsing activities of the mobile device without the user's consent, and outside of the control of the owner of the mobile device.

218.   All these acts described above were acts in excess of any authority any user granted Defendants when the user purchased the Samsung mobile device that had IQ Agent preinstalled or updated on the device without the user's consent or knowledge. By engaging in deception and misrepresentation, whatever authority or permission Plaintiffs and Class Members may have granted to Defendants was exceeded.

219.   Defendants' installation and operation of its program used, interfered, and/or intermeddled with Plaintiffs' and Class Members' mobile devices. Such use, interference and/or intermeddling was without Plaintiffs' and Class Members' consent or, in the alternative, in excess of Plaintiffs' and Class Members' consent.

220.   Defendants' installation and operation of its program constitutes trespass, nuisance, and an interference with Plaintiffs' and Class Members' chattels, to wit, their mobile devices.

221.   Defendants' installation and operation of the Carrier IQ program impaired the condition and value of Plaintiffs' and Class Members' mobile devices.

222.   Defendants' trespass to chattels, nuisance, and interference caused real and substantial damage to Plaintiffs and Class Members  Defendants exposed Plaintiffs' and Class Members' personal information to any third party software with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile devices including battery power, cell phone memory, CPUs, and bandwidth.  Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Carrier IQ.

223.   As a direct and proximate result of Defendants' trespass to chattels, nuisance, interference, unauthorized access of and intermeddling with Plaintiffs' and Class Members' property, Defendants have injured and impaired Plaintiffs and Class Members in the condition and value of Plaintiffs' Class Members' mobile devices, as follows:

(a)   By consuming the resources of and/or degrading the performance of Plaintiffs' and Class Members' mobile devices (including space, memory, processing cycles, Internet connectivity, and unauthorized use of their bandwidth);

(b)   By diminishing the use of, value, speed, capacity, and/or capabilities of Plaintiffs' and Class Members' mobile devices;

(c)   By devaluing, interfering with, and/or diminishing

1  Plaintiffs' and Class Members' possessory interest in their mobile devices;

2          (d)    By altering and/or controlling the functioning of Plaintiffs'

3  and Class Members' mobile devices;

4          (e)    By infringing on Plaintiffs' and Class Members' right to

5  exclude others from their mobile devices;

6          (f)    By infringing on Plaintiffs' and Class Members' right to

7  determine, as owners of/or their mobile devices, which programs should be

8  installed and operating on their mobile devices;

9          (g)    By compromising the integrity, security, and ownership of

10  Class Members' mobile devices; and

11          (h)    By utilizing Plaintiffs' and Class Members' mobile device

12  resources without notice or consent.

<div align="center">

### THIRTEENTH CAUSE OF ACTION

#### Unjust Enrichment

#### Against All Defendants

</div>

16      224.   Plaintiffs hereby incorporate by reference the allegations contained

17  in all of the paragraphs of this complaint.

18      225.   By engaging in the conduct described in this Complaint, Defendants

19  have knowingly obtained benefits from the Plaintiffs and Class Members under

20  circumstances that make it inequitable and unjust for Defendants to retain them.

21      226.   Plaintiffs and the Class have conferred a benefit upon the

22  Defendants who have, directly or indirectly, received and retained the

23  confidential information of Plaintiffs and Class Members as set forth herein.

24  Defendants have received and retained information that is otherwise private,

25  confidential, and not of public record, and/or have received revenue from the

26  provision, use, and or trafficking in the sale of such information.

27      227.   Defendants appreciate and/or have knowledge of said benefit.

28      228.   Under principles of equity and good conscience, Defendants should

not be permitted to retain the information and/or revenue that they acquired by virtue of their unlawful conduct. All funds, revenue, and benefits received by them rightfully belong to Plaintiffs and the Class, which the Defendants have unjustly received as a result of their actions.

229. Plaintiffs and Class Members have no adequate remedy at law.

230. Defendants have received a benefit from Plaintiffs and Class Members and Defendants have received and retained money or other benefits from third parties as a result of sharing Plaintiffs' and Class Members' confidential information of Plaintiffs and Class Members without Plaintiffs' or Class Members' knowledge or consent as alleged in this Complaint.

231. Plaintiffs and Class Members did not expect that Defendants would seek to gain commercial or business advantage from third parties by using their personal information without their knowledge or consent.

232. Defendants knowingly used Plaintiffs' and Class Members' confidential information without their knowledge or consent to gain commercial advantage from third parties and had full knowledge of the benefits they have received from Plaintiffs and Class Members. If Plaintiffs and Class Members had known Defendants were not keeping their confidential information from third-parties, they would not have consented and Defendants would not have gained commercial or business advantage from third parties.

233. Defendants will be unjustly enriched if Defendants are permitted to retain the money or other benefits paid to them by third parties, or resulting from the commercial or business advantage they gained, in exchange for Plaintiffs' and Class Members' confidential information.

234. Defendants should be required to provide restitution of all money obtained from their unlawful conduct.

235. Plaintiffs and the Members of the Class are entitled to an award of compensatory and punitive damages in an amount to be determined at trial or to

1    be imposition of a constructive trust upon the wrongful revenues and/or profits

2    obtained by and benefits conferred upon Defendants as a result of the wrongful

3    actions as alleged in this complaint.

4         236.   Plaintiffs and the Class have no remedy at law to prevent Defendants

5    from continuing the inequitable conduct alleged in this complaint and the

6    continued unjust retention of the money and/or benefits Defendants received

7    from third parties.

## FOURTEENTHCAUSE OF ACTION

### Conversion

### Against All Defendants

11        237.   Plaintiffs hereby incorporate by reference the allegations contained

12   in all of the preceding paragraphs of this complaint.

13        238.   Plaintiffs' and Class Members' mobile device data, including but not

14   limited to their incoming text messages, URLs of websites viewed and GPS

15   coordinates, was viewed by Defendants and made available to third party

16   software and applications with log file permission to collect confidential,

17   unencrypted data about Plaintiffs' and Class Members' mobile device activities.

18   Such property, owned by the Plaintiffs and Class Members, is valuable to the

19   Plaintiffs and Class Members.

20        239.   Plaintiffs' and Class Members' mobile devices use battery power,

21   cell phone memory, CPUs, and bandwidth. Defendants' activities, made the basis

22   of this action, used without notice or authorization, such battery power, memory,

23   CPU and bandwidth for purposes not contemplated and not agreed to by

24   Plaintiffs and Class Members when they purchased their Samsung mobile

25   devices. Such property, owned by Plaintiffs and Class Members, is valuable to

26   Plaintiffs and Class Members. Plaintiffs and Class Members were damaged by

27   Defendants' unauthorized use of Plaintiff's and Class Members' battery power,

28   cell phone memory and CPUs, as well as bandwidth. Moreover, Defendants

1   utilized Plaintiffs' and Class Members' limited text messages in order to send

2   secret and unauthorized instructions to their mobile devices. Plaintiffs and Class

3   Members paid unauthorized charges for every hidden text message that was sent

4   by Defendants.

5       240.   Defendants unlawfully exercised dominion over said property and

6   thereby converted Plaintiffs' and Class Members' property.

7       241.   Plaintiffs and Class Members were damaged by Defendants' actions.

**PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly

10  situated, pray for judgment against Defendants as follows:

11      A.     Certify this case as a Class action on behalf of the Classes defined

12  above, appoint Plaintiffs as Class representatives, and appoint their counsel as

13  Class counsel;

14      B.     Declare that the actions of Defendants, as set out above, violate the

15  claims alleged;

16      C.     Award injunctive and equitable relief including, *inter alia*: (i)

17  prohibiting Defendants from engaging in the acts alleged above; (ii) requiring

18  Defendants to disgorge all of their ill-gotten gains to Plaintiffs and Class

19  Members, or to whomever the Court deems appropriate; (iii) requiring

20  Defendants to delete all data surreptitiously or otherwise collected data through

21  the acts alleged above; (iv) requiring Defendants to provide Plaintiffs and Class

22  Members a means to easily and permanently decline any participation in any data

23  collection activities; (v) awarding Plaintiffs and Class Members full restitution of

24  all benefits wrongfully acquired by Defendants by means of the wrongful

25  conduct alleged herein; and (vi) ordering an accounting and constructive trust

26  imposed on the data, funds, or other assets obtained by unlawful means as alleged

27  above, to avoid dissipation, fraudulent transfers, and/or concealment of such

28  assets by Defendants;

1       D.    Award damages, including statutory damages where applicable, to

2   Plaintiffs and Class Members in an amount to be determined at trial;

3       E.    Award restitution against Defendants for all money to which

4   Plaintiffs and the Classes are entitled in equity;

5       F.    Restrain Defendants, their officers, agents, servants, employees, and

6   attorneys, and those in active concert or participation with them from continued

7   access, collection, and transmission of Plaintiffs' and Class Members'

8   confidential user data via preliminary and permanent injunction;

9       G.    Award Plaintiffs and the Classes:

10       (i)    Compensatory damages sustained by Plaintiffs and

11   all others similarly situated as a result of Defendants' unlawful acts and

12   conduct;

13       (j)    Restitution, disgorgement and/or other equitable

14   relief as the Court deems proper;

15       (k)    Plaintiffs' reasonable litigation expenses and

16   attorneys' fees;

17       (l)    Pre- and post-judgment interest, to the extent

18   allowable;

19       (m)    Statutory damages, including punitive damages; and

20       (n)    Permanent injunction prohibiting Defendants from

21   engaging in the conduct and practices complained of herein.

22   For such other and further relief as this Court may deem just and proper.

23   Dated this 8th day of December, 2011.

24

25   By: _____

26   STRANGE & CARPENTER

27   Brian R. Strange (Cal. Bar. No. 103252)
    LACounsel@earthlink.net

28       12100 Wilshire Boulevard, Suite 1900

Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
malleylaw@gmail.com
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100

*Counsel for Plaintiffs and the Proposed Class*

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated this 8th day of December, 2011.



By:

STRANGE & CARPENTER

Brian R. Strange (Cal. Bar. No. 103252)
LACounsel@earthlink.net
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
malleylaw@gmail.com
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1899 AG (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Brian R. Strange, 103252
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
Tel: (310) 207-5055

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA CLARK, FELIPE GARCIA and ROBERT SPRADLEY; individuals, on behalf of themselves and others similarly situated,<br><br>PLAINTIFF(S) | CASE NUMBER<br><br>**SACV11-01899 AG (JPRx)** |
| v.<br><br>CARRIER IQ, INC., a Delaware Corporation; SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC<br><br>DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): Carrier IQ, Inc., a Delaware Corporation; Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Brian R. Strange_____, whose address is __12100 Wilshire Blvd., Suite 1900, Los Angeles, California 90025_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ - 8 2011

By: **AMY DeAVILA**
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| LISA CLARK, FELIPE GARCIA and ROBERT SPRADLEY; individuals, on behalf of themselves and others similarly situated | CARRIER IQ, INC., a Delaware Corporation; SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Brian R. Strange, 103252    Tel: 310-207-5055 STRANGE & CARPENTER 12100 Wilshire Blvd., Suite 1900, Los Angeles, California 90025 | unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No    ☒ MONEY DEMANDED IN COMPLAINT: $ over $5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is a class action against Defendants pursuant to the Class Action Fairness Act of 2005, 28 U.S.C., section 1332(d)(2).

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | | | |
| | ☐ 290 All Other Real Property | | | | |

**SACV11-01899 AG (JPRx)**

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s): 2:11-cv-10108-CBM-PJW; 2:11-cv-10076-GAF-MRW

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                     ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                     ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                     ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
    ☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Lisa Clark - Oklahoma<br>Felipe Garcia - Texas<br>Robert Spradley - Texas |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
    ☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Carrier IQ, Inc. - Santa Clara County<br>Samsung Electronics America, Inc. - New Jersey<br>Samsung Telecommunications America, LLC - Texas |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date December 8, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |